UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GARFIELD CLARK,

                          Plaintiff,

          - against -

CITY OF NEW YORK, POLICE OFFICER
ANN MARIE HAINES, DETECTIVE
SALVATORE SACCENTE, and J.C.,

                          Defendants.
---------------------------------------------------------X

**MEMORANDUM & OPINION**

Case No. 09 CV 2533 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Garfield Clark filed this action in 2009 following the Queens County Criminal Court's dismissal of criminal charges against him in the interests of justice. Plaintiff brings causes of action for false arrest under 42 U.S.C. § 1983 ("Section 1983"), malicious prosecution under Section 1983 and state law, and negligence against Defendants City of New York, New York City Police Department ("NYPD") Officer Ann Marie Haines, NYPD Detective Salvatore Saccente, and J.C., the minor who alleged that Plaintiff sexually abused her.[1]

Defendants City of New York, Haines, and Saccente (collectively, "the City Defendants") now move for summary judgment on Plaintiff's claims. For the reasons set forth below, the Court grants the City Defendants' motion in part and denies it in part. Plaintiff's false arrest and malicious prosecution claims against Saccente will proceed to trial. Plaintiff's negligence claim against the City and his claims against Haines are dismissed with prejudice.

---

[1] When Plaintiff initiated suit in 2009, he named the complaining victim as a defendant. At the time, she was still a minor. The Court therefore substitutes her initials for her name in the caption and directs the Clerk of the Court to amend the caption as shown above. J.C. has not appeared in this action. However, as discussed *infra*, Plaintiff has failed to move for default against J.C., despite the direction of the presiding Magistrate Judge, the Honorable Cheryl L. Pollak, to do so.

## I. BACKGROUND

### A. Counsel's Failure To Abide By Court Orders and Rules

Before turning to the City Defendants' motion, the Court first addresses the persistent failure of Plaintiff's counsel, Tamara M. Harris, to abide by the Court's Orders and Individual Rules. Plaintiff's counsel has repeatedly missed deadlines in this matter, resulting in three requests for an extension of time to serve the opposition brief, all of which were made *after* the deadlines had passed. (*See* Dkt. 66, First Motion for Extension of Time (filed two days after service deadline); Dkt. 67, Second Motion for Extension of Time (filed three days after service deadline); Dkt. 68, Third Motion for Extension of Time (filed ten days after service deadline).) Though the Court recognizes that Ms. Harris encountered a family emergency during briefing, the Court nevertheless expects a reasonably diligent attorney to request an extension *before* a deadline has passed.[2]

Furthermore, Plaintiff's counsel ultimately served and filed an oversize brief of 39 pages, 14 pages longer than what is allowed under this Court's Individual Rules. Plaintiff's counsel did not seek leave for additional pages. The City Defendants urge the Court to disregard the portion of Plaintiff's opposition brief over the page limit, and the Court agrees that this is an appropriate sanction. The Court therefore disregards pages 26 through 39 of Plaintiff's opposition memorandum.

It also appears that Plaintiff's counsel has defied, or at a minimum circumvented, Judge Pollak's October 28, 2013 Order, denying Plaintiff's motion to compel J.C.'s psychiatric records,

---

[2]     Furthermore, in a transparent effort to circumvent the Court's November 4, 2014 Order stating that no further extensions would be granted, Plaintiff's counsel filed a "motion to compel" discovery on November 7, 2014 (the date her brief was due), stating that she could not complete her opposition on time without a copy of a witness's deposition. (*See* Dkt. 69, Motion to Compel.)

the criminal file of J.C.'s stepfather, and a domestic violence incident report as to J.C. (*See* Dkt. 58, Order Denying Motion to Compel dated Oct. 28. 2013.)[3] Attached to Plaintiff's Opposition is an exhibit showing the NYPD domestic violence incident report as to J.C. (*See* Pl. Ex. C.)[4] Plaintiff's counsel also based some of her deposition questioning on J.C.'s psychiatric records, which Ms. Harris clearly obtained in contravention of Judge Pollak's Order.[5] The Court therefore disregards any references to Plaintiff's Exhibit C, as well as any uncited references to J.C.'s psychiatric history.[6]

---

[3]     As discussed *infra*, Judge Pollak denied Plaintiff's motion to compel J.C.'s psychiatric records based on Ms. Harris's failure to file a letter-brief in support of her motion, despite Judge Pollak's directive to do so by a specified date. (Dkts. 57, 58.)

[4]     As the City Defendants note in their reply memorandum, Plaintiff's counsel also neglected to serve and file a declaration setting forth the bases of admissibility or authenticity for each exhibit attached to the opposition brief. (*See* City Def. Reply at 2.) They urge the Court to disregard all of Plaintiff's exhibits as inadmissible. The Court declines to do so on a wholesale basis, since several of Plaintiff's exhibits are clearly marked as deposition exhibits, and therefore sufficiently verifiable.

[5]     Of particular concern to the Court is Ms. Harris's use of J.C.'s psychiatric records during discovery in this case—plainly flaunting Judge Pollak's Order denying her request to compel their production—and her blatant misrepresentation about the circumstances by which she came to possess them. In the deposition of J.C.'s mother, Ms. Harris asked: "Are you aware the psychiatric records from your daughter's hospitalization were actually obtained by the Queens DA's office *in relation to this litigation*?" (Pl. Ex. M, Rapley Dep. at 23:11 (emphasis added).) Ms. Harris's question falsely suggests that the Queens District Attorney's Office obtained J.C.'s psychiatric records *for* this litigation and that these records are properly part of the record in this case. As such, Ms. Harris's questioning was wholly misleading and improper. While Judge Pollak's Order did not bar Plaintiff from seeking to admit or use J.C.'s psychiatric records that might be lawfully obtained through independent sources, it certainly put Ms. Harris on notice of the Court's concern about the indiscriminate use of these sensitive and privacy-protected records, and the need to seek the Court's permission before using them to examine witnesses. Indeed, Ms. Harris's failure to comply with Judge Pollak's order to file a letter-brief supporting the production of these records was reasonably interpreted to signal to defense counsel and the Court that Ms. Harris had abandoned any intention to obtain or use these records, only to have them sprung on a witness—no less J.C.'s mother—at a deposition. Such stealth and gamesmanship are contrary to the ethical rules that govern the legal profession.

[6]     Other exhibits in the summary judgment record establish that the parties had independent knowledge of J.C.'s mental health issues through admissible sources, and therefore will be

Until now, the Court has excused Ms. Harris's irresponsible and unprofessional conduct, so as not to penalize Plaintiff or undermine his case. However, Ms. Harris is cautioned that her continued failure to comply with Judge Pollak's or this Court's orders and rules, or the failure to comply with her ethical obligations, will result in monetary sanctions against her. The Court also reminds Ms. Harris that a chasm separates zealous representation and unethical conduct, and that she would be well-advised to stay on the ethical side of that divide.

Having addressed the improper conduct of Plaintiff's counsel, the Court now turns to the City Defendants' motion.

### B.    Facts

The following facts are taken from the parties' 56.1 submissions, and are undisputed unless otherwise noted.[7]

The incident underlying Plaintiff's arrest occurred on January 13, 2007. (City 56.1, ¶ 3.) Clark and J.C. knew each other through a familial relationship; at the time of the incident, Clark was married to the cousin of J.C.'s mother. (City Ex. D.) At the time of the incident, J.C. was 14 years old, and Clark was 36. (Pl. Ex. F.)

It is undisputed that Clark and J.C. were alone in a car on January 13, 2007. (City 56.1, ¶ 3.) Shortly thereafter, J.C. reported to her aunt and grandmother that Plaintiff had touched her,

---

considered. (*See, e.g.*, City Def. Ex. D (Report dated 1/8/07 noting that "Mrs. Rapley further states that the [complaining victim] is in the hospital for depression")).)

[7]    The City Defendants filed a 56.1 statement, to which the Plaintiff filed an opposition and further statement of facts. (*See* Dkt. 75, Defendants' Rule 56.1 Statement ("City 56.1"); Dkt. 80, Plaintiff's 56.1 Opposition ("Pl. 56.1 Opp.").) The City Defendants filed responses and objections to Plaintiff's additional statements. (Dkt. 78, Defendants' Responses and Objections to Plaintiff's 56.1 Statement ("City 56.1 Reply").) Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

sexually propositioned her, and would not let her leave the car. (City 56.1, ¶ 4.)[8] J.C.'s mother, Karen Rapley, heard of J.C.'s allegations. (City 56.1, ¶ 4.) The City contends that Rapley and J.C. reported the incident to the NYPD in-person on January 24, 2007, but Plaintiff disputes that J.C. was present. (City 56.1, ¶¶ 4-5; Pl. 56.1 Opp., ¶¶ 4-5.) The complaint form initially logging the incident states that "reporter [Rapley] states that perp did tell her young daughter that she has a nice body and he wanted to make her a woman before any man did [,] causing annoyance and alarm." (City Ex. C.) NYPD Officer Haines took the initial complaint, and also prepared a domestic incident report. (*Id.*; Pl. Ex. F.)

On January 28, 2007, the complaint was assigned to NYPD Detective Saccente for investigation. (City 56.1, ¶ 8.) On January 28, 2007, Saccente spoke by telephone with Rapley. (City 56.1, ¶ 9.) Rapley indicated to Saccente that J.C. was in the hospital for depression. (City Ex. D.)

On January 31, 2007, Saccente and J.C. spoke by telephone. (City Ex. E.) J.C. stated that when Clark was talking to her in his car, he began to repeatedly touch the inner part of her thigh with his hand, and that when she tried to exit the vehicle, he kept locking the doors. (City Ex. E.) J.C. also stated that Clark said to her, "I can make you a woman." (City Ex. E.) The parties dispute—and it is not clear from the record—J.C.'s whereabouts at the time of her telephone conversation with Saccente—whether she was at home, as the City Defendants contend, or whether she was in the hospital, as Plaintiff contends. (*Compare* City Ex. E (record of telephone call with J.C., listing same number as used for Rapley) *with* Pl. Ex. D (Saccente's notes indicating that J.C. was in the psychiatric ward at LIJ Zucker Hillside Hospital, had been

---

[8]     Clark objects to this statement as inadmissible hearsay. The Court considers this fact not for the truth of the matter asserted, but to establish how J.C.'s complaint made its way to the police and what information the police may have had at the time of Clark's arrest.

"admitted for depression, [and was] being discharged tomorrow 2/7/07.").) The City Defendants concede that Saccente knew J.C. was receiving treatment at a hospital for depression, but dispute Plaintiff's claim that Saccente believed J.C. had been committed there or was unable to leave. (City 56.1 Reply, ¶ 24.) The City Defendants further state that Saccente did not interview J.C. while she was being treated for depression, further muddying the timing of events with respect to J.C.'s hospitalization. (City 56.1 Reply, ¶ 25.)

On January 31, 2007, Saccente called Clark. The City contends that Clark declined to provide a statement about the incident and told Saccente that he (Clark) would have an attorney call to arrange for a surrender. (City 56.1, ¶ 11.) Clark, however, contends that Saccente did not ask him for a statement and only advised him that he (Clark) was going to be arrested. (Pl. 56.1 Opp., ¶ 11.)

The City Defendants state that Saccente met with J.C. in-person on February 8, 2007 and had her sign the criminal complaint, but Plaintiff contends that this meeting never took place, pointing to the unsigned criminal complaint in the official court file and Saccente's inability to describe J.C. at his deposition beyond her race and gender. (City 56.1, ¶ 12; Pl. 56.1 Opp., ¶ 12.) Plaintiff contends that the signed version of the criminal complaint produced by Defendants at Saccente's deposition does not comport with the copy of the complaint from the official court file. (Pl. 56.1 Opp., ¶ 12.) Indeed, the record contains two different versions of the February 8, 2007 criminal complaint—one signed by J.C. and the other unsigned and without a space for her signature. (*Compare* City Ex. H (signed by J.C.) *with* Pl. Ex. I (not signed by J.C.).)[9]

---

[9] The City Defendants do not contest that different versions of the criminal complaint exist, because they filed both versions in their exhibits. (*See* City Ex. H (signed by J.C.); City Ex. J (unsigned by J.C., same document as Pl. Ex. I, except with additional page.).) The City Defendants' explanation for the different versions is that J.C. signed the original criminal complaint on the wrong page, which necessitated her execution of the March 11, 2007

Plaintiff further points out that there is no paperwork to substantiate an in-person meeting between Saccente and J.C. on February 8, 2007, despite there being other paperwork in the file memorializing other steps taken in the investigation. (Pl. 56.1 Opp., ¶ 31.) The City Defendants admit there is no "DD5" form associated with his meeting with J.C., but point to Saccente's deposition testimony that he would not necessarily have prepared such a form because what J.C. told him that day would have gone into the criminal complaint. (City 56.1 Reply, ¶ 31.)

On February 8, 2007, the City arrested Clark and charged him with sexual abuse, forcible touching, unlawful imprisonment, and endangering the welfare of a minor. (City 56.1, ¶ 15.) Clark contends that when he appeared at the precinct to be arrested, Saccente made comments to Clark to the effect that Jamaicans, like Clark, were attracted to little girls. (Pl. 56.1 Opp., ¶ 32.) Saccente, however, testified in his deposition that he had no such conversation with Clark because Clark self-surrendered, and that Saccente had never interviewed Clark. (City 56.1 Reply, ¶ 30.) The parties do not dispute that Saccente's supervisor had to approve Clark's arrest beforehand. (Pl. 56.1 Opp., ¶ 37.)

On March 11, 2007, J.C. executed a supporting deposition attesting to the truthfulness of the allegations in the criminal complaint against Clark. (City Ex. J.)

On June 12, 2008, the Queens County Criminal Court dismissed all charges against Clark in the interests of justice.[10] (City 56.1, ¶ 16.) The dismissal came after the judge issued a decision to release J.C.'s psychiatric records to Clark. (Pl. 56.1 Opp., ¶ 36.)

---

supporting deposition confirming the truth of the facts alleged in the criminal complaint. (Dkt. 76, Defendants' Reply Memorandum (" Def. Reply") at 11.)

[10]     The current record does not specify whether Clark was indicted, but the Court presumes that Clark was not.

Clark filed a Notice of Intent to file a claim against the City, pursuant to General Municipal Law § 50-e, on August 22, 2008. (City Ex. K.)

## C. Procedural History

Clark filed this action on June 12, 2009, naming the City of New York, NYPD Officer Haines, NYPD Detective Saccente, and J.C. as defendants. (*See* Dkt. 1, Compl.) J.C. has not appeared in this action. On April 1, 2011, Judge Pollak ordered Plaintiff to move for a default judgment as to J.C. (Dkt. 27), but it does not appear from the docket that Plaintiff has done so.

On May 3, 2010, Plaintiff filed an amended complaint. (Dkt. 12, Am. Compl.) Plaintiff's Amended Complaint asserts causes of action for false arrest and malicious prosecution under Section 1983 (Count One), negligence/negligent supervision (Count Two), and state law malicious prosecution (Count Three).[11]

On August 27, 2013, Plaintiff filed a motion to compel J.C.'s psychiatric records from the criminal proceeding against Clark. (Dkt. 54, Plaintiff's First Motion to Compel.) However, Plaintiff failed to comply with Judge's Pollak's September 4, 2013 Order directing counsel to supply a letter-brief setting forth authority for such discovery. (Dkt. 57, Minute Entry for Telephone Conference.) Accordingly, on October 28, 2013, Judge Pollak denied Plaintiff's motion to compel. (Dkt. 58, Order dated October 28, 2013.)

On December 22, 2014, the City Defendants filed their motion for summary judgment. (Dkt. 71.)

---

[11] The Amended Complaint fails to identify which Defendant is allegedly liable on each count. (*See* Dkt. 12, Am. Compl., ¶¶ 5–33.) The Court, however, construes the Amended Complaint as alleging Count One (Section 1983 false arrest and malicious prosecution) against Saccente and Haines; Count Two (negligence) against the City Defendants; and Count Three (state law malicious prosecution) against J.C. (*See id.*, ¶¶ 5 (alleging Haines and Saccente to be state actors for purposes of Section 1983 claim); ¶ 23 (stating City, Haines and Saccente owed Clark a duty of care); ¶ 33 (seeking damages from J.C.).)

## II.    STANDARD OF REVIEW

The Court may grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ("*Liberty Lobby*"). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Liberty Lobby*, 477 U.S. at 249); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *see also Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 273 (2d Cir. 2015) ("'A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (quoting *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir. 2003)).

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp.*, 477 U.S. at 323. "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].'" *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Liberty Lobby*, 477 U.S. at 252) (alterations in original); *see also Lyons v. Lancer*

*Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012). The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Brown*, 654 F.3d at 358 (quotations and citations omitted), and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (citations and quotations omitted). In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III.    DISCUSSION

The City Defendants move for summary judgment on Plaintiff's claims for (1) false arrest and imprisonment, under Section 1983; (2) malicious prosecution, under Section 1983; and (3) negligence.[12]

### A.    Section 1983 False Arrest Claim

The City Defendants contend that Plaintiff's Section 1983 claim for false arrest and imprisonment fails against Haines because she was not personally involved in Clark's arrest and against Saccente because his arrest of Clark was supported by probable cause. They further argue that if the Court should find the arrest was not supported by probable cause, Saccente is entitled to qualified immunity.

---

[12]     As set forth in footnote 11, the Court reads Plaintiff's Amended Complaint as asserting a state law malicious prosecution claim against J.C. and not any of the City Defendants. To the extent Plaintiff's Complaint could be construed as asserting a state law malicious prosecution claim as to the City Defendants, the Court's analysis remains the same because a Section 1983 malicious prosecution shares the same elements as a cause of action under New York law. *See infra*, Section III.B.

1.    <u>Haines Not Personally Involved</u>

The City Defendants contend that Haines is entitled to summary judgment on Plaintiff's false arrest claim because the undisputed facts show that Haines was not personally involved in his arrest.  (Def. Memo at 9.)  Under Section 1983, a defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages.  *Jackson v. City of New York*, 29 F. Supp. 3d 161, 179 (E.D.N.Y. 2014) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  If there is no genuine dispute of fact regarding a defendant's personal involvement in the alleged deprivation, the Court may dismiss the defendant from the claim in question.  *See Jackson*, 29 F. Supp. 3d at 179–80 (dismissing officer from plaintiff's false arrest claim where plaintiff set forth no evidence to show that the officer was involved in his arrest).

Here, the facts show that Haines' involvement in Clark's arrest was limited to her intake of the initial complaint against Clark and her preparation of a domestic incident report.  (*See* City 56.1, ¶ 7; City Ex. C.; Pl. Ex. F.)  Following intake, Saccente took over the investigation of the complaint.  (City 56.1, ¶ 8.)

Plaintiff argues that Haines cannot be dismissed from his false arrest claim.  Specifically, Plaintiff alleges that Haines forwarded false information that led to his arrest; he claims that the domestic incident report that Haines prepared falsely reported that J.C. had no domestic incident history.  (Pl. 56.1 Opp., ¶ 33.)  The City contends, however, that the question on the form regarding prior domestic violence history pertains to whether *Clark*, not J.C., had a history of domestic violence.  (City 56.1 Reply, ¶ 33.)  Looking at the form in question, there is no dispute of fact on this issue—the box asking whether there is a prior domestic violence history is clearly next to Clark's name in the "Suspect" area of the form, and thus unequivocally refers to Clark's, and not J.C.'s, history of domestic violence.  (Pl. Ex. F.)  Plaintiff therefore may not rely on the

form to create an issue of fact as to Haines' involvement, given that his allegation is wholly conclusory and unsupported by the record.

Plaintiff has not set forth any other facts indicating that Haines was personally involved in his arrest. Notably, he does not claim that Haines falsely reported the statements made by Rapley on the date of the report. Finding no dispute of fact as to Haines' lack of personal involvement in Clark's arrest, the Court dismisses Haines from Count One of the Amended Complaint.

### 2. Probable Cause

A claim for false arrest under Section 1983 is substantially the same as that under New York law. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, to prove the elements of false arrest, a plaintiff must establish that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994)).

Probable cause is a complete defense to a claim of false arrest, whether the claim is pled under Section 1983 or state law. *Jenkins*, 478 F.3d at 84 (citing *Weyant*, 101 F.3d at 852 (internal citations omitted)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id*. (citing *Weyant*, 101 F.3d at 852). The Court evaluates probable cause based on the facts available to the officer or officers at the time of the arrest, and looks at the totality of circumstances. *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citations omitted); *see also Bernard*, 25 F.3d at 102 (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).

Where there is no dispute as to the facts of the arrest and the knowledge of the officers involved, the Court may determine probable cause as a matter of law. *Weyant*, 101 F.3d at 852; *see also Koester v. Lanfranchi*, 288 F. App'x 764, 767 (2d Cir. 2008) (stating that the district court may determine the issue of probable cause as a matter of law where the plaintiff does not dispute the facts known to the officers at the time of arrest). However, where the underlying facts are disputed, summary judgment is inappropriate. *Weyant*, 101 F.3d at 852.

Here, the Court finds that a genuine issue of material fact exists as to whether Clark's arrest was supported by probable cause, such that summary judgment is inappropriate at this time. Plaintiff disputes the basis upon which Saccente judged J.C.'s trustworthiness and veracity before he arrested Clark. Though, as the victim, J.C. would ordinarily be presumed to be truthful, Plaintiff raises questions about whether J.C. ever met with the police in-person before Plaintiff's arrest. *See Reinhart v. City of Schenectady Police Dep't*, 599 F. Supp. 2d 323, 328–29 (N.D.N.Y. 2009) ("Absent special circumstances suggesting distrust, a private citizen is presumed reliable, *especially where she meets face-to-face with the police.*" (citing *United States v. Elmore,* 482 F.3d 172, 180–81 (2d Cir. 2007) (citations omitted)) (emphasis added)). Indeed, a police officer may not "neglect all investigative duties in relying on a victim statement; [he] can only derive probable cause to effect an arrest from that statement 'absent circumstances that raise doubts as to the vicitm's veracity.'" *Parisi v. Suffolk Cnty.*, No. 04 CV 2187, 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009). Plaintiff states that genuine questions exist as to whether J.C. was present with Rapley when Rapley initially reported the incident to the police, and also whether Saccente in fact interviewed J.C. in-person on February 8, 2007, given the unsigned criminal complaint in the court docket, Saccente's inability to describe J.C.'s appearance beyond her race and gender, and the lack of paperwork in the police file documenting

such a meeting. The City responds to these arguments by stating that J.C. signed the original criminal complaint on the wrong page, an issue that was rectified with her execution of the March 11, 2007 supporting deposition, and by noting that Saccente's deposition took place six years after he met J.C., thus explaining why he could not remember what she looked like. (City 56.1 Reply, ¶ 29; Def. Reply at 11.) In other words, the City Defendants merely contest the facts surrounding Saccente's investigation of the case.

At the summary judgment stage, the Court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *See DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010) (citing *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006)). Here, the Court finds that Plaintiff has pointed to a number of facts that call into question whether Saccente had "reasonably trustworthy information . . . sufficient to warrant a person of reasonable caution in the belief that" Clark committed the alleged crime against J.C. *See Jenkins*, 478 F.3d at 84; *see also Cornett v. Brown*, No. 04 CV 0754, 2007 WL 2743485, at *5–6 (E.D.N.Y. Sept. 17, 2007), *aff'd sub nom. Cornett v. Jamison*, 326 F. App'x 624 (2d Cir. 2009) (finding a genuine issue of material fact as to whether officer had probable cause to arrest the plaintiff, where officer based arrest on telephone call and unsigned complaint). The Court finds that a genuine issue of fact exists as to whether Plaintiff's arrest was supported by probable cause.

### 3. Qualified Immunity

Though the Court has found an issue of fact exists with respect to whether the City Defendants had probable cause to arrest Clark, summary judgment "might still be appropriate if defendants can demonstrate that they are entitled to qualified immunity." *Sanders v. City of New York*, No. 12 CV 113, 2015 WL 1469514, at *7 (E.D.N.Y. Jan. 7, 2015), *report and*

*recommendation adopted*, 2015 WL 1469506 (E.D.N.Y. Mar. 30, 2015). "Under federal law, a police officer is entitled to qualified immunity where '(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act.'" *Jenkins,* 478 F.3d at 87 (quoting *Cerrone v. Brown,* 478 F.3d 194, 199 (2d Cir. 2001)). Where, as here, the Court assesses the City Defendants' ability to claim qualified immunity with respect a false arrest claim, the Court considers whether there was "arguable probable cause" to arrest Clark, *i.e.* whether (1) it was objectively reasonable for Saccente to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether the probable cause test was met. *See Sanders*, 2015 WL 1469514, at *7 (citing *Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir. 2010) (quoting *Walczyk v. Rio,* 496 F.3d 139, 163 (2d Cir. 2007))).

Because an issue of fact exists as to whether Saccente sufficiently assessed J.C.'s veracity and trustworthiness prior to arresting Clark, the Court cannot determine at this juncture whether it was objectively reasonable for Saccente to believe that probable cause existed or that officers of reasonable competence could disagree on whether he had probable cause to arrest Clark. If, as Plaintiff contends, Saccente did not meet with J.C. in-person before the arrest, the Court could find that officers of reasonable competence in that situation would not find that there was probable cause to arrest Clark.[13] *See Stephenson v. Doe*, 332 F.3d 68, 80 (2d Cir. 2003) (noting

---

[13] Here, the disputed issue of fact pertains to whether Saccente met J.C. in-person and sufficiently assessed her credibility before arresting Clark. The Court therefore does not find persuasive the City Defendants' argument that they are entitled to qualified immunity "because officers could reasonably believe that probable cause existed when there is an eyewitness account from the victim." (Def. Memo at 15–16.) The City Defendants cite cases where the officer-defendants indisputably met with the complaining victim in-person, thus making it reasonable for them to credit the victims' allegations.

judge, not the jury, decides the issue of qualified immunity).  The Court therefore finds that, on the current record, the City Defendants are not entitled to qualified immunity with respect to Clark's false arrest claim.  *See Sanders*, 2015 WL 1469514, at \*14 (denying qualified immunity to officers on plaintiffs' false arrest claims due to material issues of fact in dispute regarding probable cause).

### B.      Section 1983 Malicious Prosecution Claim

To prevail on a Section 1983 malicious prosecution claim, the plaintiff must establish the elements of a malicious prosecution claim under state law, and also show "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Manganiello v. City of New York,* 612 F.3d 149, 160–61 (2d Cir. 2010).  The elements for a malicious prosecution claim in New York are: (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions. *Id.* at 161.

The City Defendants move for summary judgment on Plaintiff's malicious prosecution claim under federal law, arguing: (1) Plaintiff has failed to establish an issue of fact with respect to lack of probable cause for proceeding against him; (2) Plaintiff cannot demonstrate a favorable termination of the criminal proceeding against him; (3) Plaintiff cannot show that they acted with actual malice; and (4) the City Defendants are entitled to qualified immunity. [14]

---

[14]      The City Defendants do not address the element regarding a post-arraignment liberty restraint.

1. <u>Dismissal of Haines</u>

With respect to Haines, the City Defendants seek her dismissal from Clark's malicious prosecution claim on an additional and separate ground, namely, that she did not initiate or continue the criminal proceeding against Clark. (Def. Memo at 10.) It is undisputed that Haines' role was limited to taking the initial complaint from Rapley (and possibly J.C.) and preparing a domestic incident report. *See* Section III.A.1.

For purposes of a malicious prosecution claim, a defendant "must do more than report the crime or give testimony" to be found to have initiated the prosecution. *Manganiello*, 612 F.3d at 163. For example, a jury may find an officer initiated a prosecution by preparing an alleged false confession or statement and forwarding it to prosecutors. *Manganiello*, 612 F.3d at 163 (citing *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1996)); *see also Blake v. Race*, 487 F. Supp. 2d 187, 211 (E.D.N.Y. 2007) (denying summary judgment to defendants on plaintiff's malicious prosecution claim where defendants allegedly provided fabricated eyewitness who gave false testimony to the prosecutor).

Having previously found no evidence to support Plaintiff's claim that Haines prepared a domestic incident report containing false information, the Court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether Haines initiated or continued the prosecution against Plaintiff. The Court therefore grants summary judgment to Haines on Plaintiff's malicious prosecution claim. The Court proceeds to determine whether Saccente is entitled to summary judgment on Plaintiff's malicious prosecution claim for the other reasons argued by the City Defendants.

2. <u>Probable Cause</u>

Just as probable cause is a complete defense to a false arrest claim, it is also a defense to a claim for malicious prosecution under Section 1983 or New York law. *See Manganiello*, 612

F.3d at 162–63 (citing *Savino*, 331 F.3d at 72). The Court's analysis of probable cause in the malicious prosecution context "is essentially the same as for false arrest except that it must be evaluated in light of facts known or believed at the time the prosecution is initiated, rather than at the time of arrest." *Sanders,* 2015 WL 1469514, at *14 (citing *Lovelace v. City of New York*, No. 02 CV 5398, 2005 WL 552387, at *2 (E.D.N.Y. Mar, 9, 2005); *see also Naim v. City of New York*, No. 10 CV 912, 2012 WL 2923308, at *3 (E.D.N.Y. July 18, 2012) (citing *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)).

Here, the only additional fact in the record for the period following Plaintiff's arrest is J.C.'s execution of a supporting deposition attesting to the accuracy of the criminal complaint. (City Ex. J.) J.C. executed the statement on March 11, 2007, three days after Clark's arrest. (*Id.*) The face of the statement directs the signatory to "read the accusatory instrument carefully and then sign and date the supporting deposition and return them as quickly as possible . . . personally or by mail." (*Id.*) Whether J.C. actually executed the statement in-person or returned it by mail is not established by the current record, and therefore the Court cannot determine, as a matter of law, that J.C.'s deposition established the requisite probable cause to support the continuation of the criminal proceeding against Clark. Having found previously that an issue of fact exists as to whether the City Defendants had probable cause to arrest, the Court finds that an issue of fact also exists as to whether the City Defendants had probable cause to initiate or continue the proceeding against Clark.

### 3.    Favorable Termination

It is undisputed that the Queens County Criminal Court dismissed all charges against Clark in the interests of justice. (City 56.1, ¶ 16.) The City Defendants argue that Plaintiff has failed to demonstrate that the dismissal constitutes a termination of the proceeding in his favor such that he may proceed with his malicious prosecution claim. (Def. Memo at 13–14.)

For purposes of a malicious prosecution claim, the Court determines the existence of a favorable termination according to state law. *Neal v. Fitzpatrick*, 250 F. Supp. 2d 153, 154 (E.D.N.Y. 2003) (citing *Hygh v. Jacobs*, 961 F.2d 359, 367 (2d Cir. 1992)). New York "does not require a malicious prosecution plaintiff to prove [his] innocence"; rather, "the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence." *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 229 (E.D.N.Y. 2010); *see also Neal*, 250 F. Supp. 2d at 154 ("The prevailing standard for establishing a dismissal on favorable grounds under New York law is, therefore, a termination not 'inconsistent with the innocence of the accused.'"). Where the proceeding "cannot be brought again," the plaintiff has established a termination in his favor. *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195–196 (N.Y. 2000).

The Court's task, then, is to determine whether the dismissal of the criminal charges against Clark was somehow inconsistent with his innocence. *See Neal*, 250 F. Supp. 2d at 155 (noting federal and state courts applying New York law "have increasingly engaged in a case-specific inquiry" to determine whether a dismissal of charges in the interests of justice constitutes a favorable termination); *see also Genovese v. County of Suffolk*, --- F. Supp. 3d ---, 2015 WL 5210550, at *7 (2d Cir. Sept. 8, 2015) (noting "the question is whether, *under the circumstances of each case*, the [dismissal in the interests of justice] was inconsistent with the innocence of the accused.") (emphasis added). In New York, a prosecutor's formal or voluntary abandonment of charges can constitute a favorable termination, so long as the abandonment did not result from a compromise, an act or mercy requested by or accepted by the accused, or misconduct by the accused. *See Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997); *see also Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 289 (E.D.N.Y. 2014) ("the 'formal abandonment' of an action under circumstances 'not inconsistent with innocence'" can

constitute a favorable termination) (citing *Cantalino v. Danner,* 96 N.Y.2d 391, 395–96 (N.Y. 2001)).

Here, the City Defendants contend that Plaintiff cannot establish a favorable termination because the criminal action against Clark was dismissed following an order releasing J.C.'s psychiatric records; in their view, the prosecutor chose not to proceed "so as not to subject [J.C.], [then] a minor, to public disclosure of highly sensitive and private matters." (Def. Reply at 9.) The Court, however, disagrees with the City Defendants' treatment of these facts. The City effectively concedes that the prosecutor abandoned the charges against Clark based on evidence that could or would be elicited and explored at trial. The Court accordingly views the dismissal here as similar to a prosecutor's voluntary or formal abandonment of charges. *See Morgan v. Nassau*, No. 03 CV 5109, 2009 WL 2882823, at *9 (E.D.N.Y. Sept. 2, 2009) (finding a favorable termination where the defendant "presumably concluded that he could not secure a conviction" and therefore terminated the prosecution) (citing *Loeb v. Teitelbaum*, 77 A.D.2d 92, 101 (N.Y. App. Div. 1980)); *Baez v. Jetblue Airways Corp.*, No. 09 CV 596, 2009 WL 2447990, at *6 n.6 (E.D.N.Y. Aug. 3, 2009) ("when a prosecutor chooses not to pursue a charge, such action 'compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution,' resulting in a 'favorable termination' of the charges for the purposes of asserting a malicious prosecution claim.").

Thus, the Court finds that Plaintiff has met his burden to demonstrate a final termination of the criminal charges against him that is not inconsistent with his innocence, and the "interests of justice" dismissal does not act as a bar to his Section 1983 malicious prosecution claim.

### 4. Malice

Under New York law, to demonstrate malice in a malicious prosecution claim, the plaintiff need not prove that "the defendant was motivated by spite or hatred." *Sanders*, 2015

WL 1469514, at *16 (citing *Newton v. City of New York,* 566 F. Supp. 2d 256, 273–274 (S.D.N.Y. 2008)). Rather, malice requires a showing that the defendant commenced the criminal proceeding "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Id.*

The Second Circuit has stated that, upon finding "an issue of material fact as to probable cause the element of malice also becomes an issue of material fact as well." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) (denying summary judgment to defendants on plaintiff's malicious prosecution claim); *see also Ricciuti*, 124 F.3d at 131 (stating that a lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment). Having found an issue of fact as to the City Defendants' defense of probable cause, the Court accordingly finds an issue of fact as to the element of malice.

### 5. Qualified Immunity

The City Defendants argue that they are entitled to qualified immunity on Plaintiff's malicious prosecution claim. However, just as the Court found that disputed issues of fact precluded the Court's award of qualified immunity on Plaintiff's false arrest claim, the Court also finds that disputed issues of fact preclude an award of qualified immunity to Defendants on Plaintiff's Section 1983 malicious prosecution claim. *See Morel v. Reed*, No. 11 CV 1808, 2015 WL 1506132, at *6–7 (E.D.N.Y. Mar. 31, 2015) (denying summary judgment for defendants on the basis of qualified immunity where material issues of fact existed as to whether probable cause or arguable probable cause supported arrest and prosecution of plaintiff). Furthermore, the evidence regarding J.C.'s post-arrest deposition does not, for the reasons previously discussed, resolve or eliminate the issues of fact with respect to probable cause.

### C.     Negligence

The City Defendants move for summary judgment on Plaintiff's negligence/negligent supervision claim, arguing that state law limits his remedy to his false arrest and malicious prosecution claims. They also argue that Plaintiff's negligence/negligent supervision claim is time-barred, and that it fails on the merits.

"Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard*, 25 F.3d at 102 (citing *Boose v. City of Rochester*, 421 N.Y.S.2d 740, 743 (N.Y. App. Div. 1979); *Dirienzo v. United States*, 690 F. Supp. 1149, 1155 (D. Conn. 1988)); *see also Burbar v. Inc. Vill. of Garden City*, 961 F. Supp. 2d 462, 474 (E.D.N.Y. 2013) (finding plaintiff's negligence claim barred under New York law in action alleging false arrest and malicious prosecution claims).

The Court accordingly finds Plaintiff's negligence claims barred pursuant to New York law, and therefore does not address the City Defendants' arguments on the claim's timeliness or its merits.

## IV.     CONCLUSION

The Court therefore denies summary judgment in part and grants it in part. The Court denies summary judgment to Defendant Saccente on Plaintiff's Section 1983 false arrest and malicious prosecution claims. These claims will proceed to trial. The Court grants summary judgment to the City Defendants with respect to Plaintiff's negligence claim (Count Two). Lastly, the Court grants summary judgment to the City of New York and Defendant Haines on all claims in this action.

The parties' proposed joint pre-trial order shall be filed ninety (90) days from the date of this Order.

SO ORDERED.


_/s/ Pamela K. Chen_
Pamela K. Chen
United States District Judge

Dated: September 29, 2015
       Brooklyn, New York